JOHN MOORE WHITE *vs.* JOHN M. W. TALLMAN et al.

1. The office of pound-keeper is a public office created by law, and a municipal corporation has no power to appoint such officer, unless the authority for that purpose is expressly given by its charter.

2. A municipal corporation has no authority to pass an ordinance creating a forfeiture of goods and chattels, or the power to authorize a distress and sale of the goods and chattels of any person, as a penalty for violating its by-laws or ordinances, unless such powers are expressly granted by its charter.

On demurrer to pleas.

John Moore White brought an action of replevin in this court against James B. Caldwell, John Eyles, and John M. W. Tallman, for taking and detaining two cows belonging to the plaintiff.

Caldwell and Eyles pleaded *non cepit*.

Tallman pleaded separately, and avowed the taking, as pound-keeper of the borough of Woodbury, by virtue of the authority vested in him under an ordinance entitled, "An act to appoint a pound-keeper, and to prescribe his duties, and for preventing the running at large of cattle, horses, mules, swine, sheep or goats," passed May 7th, 1855. This ordinance authorized the appointment of a pound-keeper, and made it his duty to take up and impound any of the above-named animals found running at large in said borough, and if no owner should appear to claim the same within one week, to advertise and sell the animal so taken up at public sale, and pay one-half of the proceeds to the borough treasurer, and retain the other half himself, the owner having the right to redeem the property at any time before sale by paying to the pound-keeper one dollar for taking up each animal, and twenty-five cents a day for keeping it.

To this plea the plaintiff demurred, on the following grounds:

"1st. Because the ordinance of the borough of Woodbury, referred to in the said plea, is void; for that the said ordinance, not having been passed at the annual meeting of the common council of said borough, directed by the charter of said borough to be held on the fourth Wednesday of March, in every year, it does not appear that the meeting of said council at which the said ordinance was passed, alleged to have been held on the seventh day of May, A. D. eighteen hundred and fifty-five, was directed to be held by ordinance of said borough.

"2d. Because the common council of said borough have no authority to appoint a pound-keeper for said borough.

"3d. Because the common council have no authority to pass an ordinance creating a forfeiture of goods and chattels.

"4th. Because the said common council have no authority to enforce obedience to an ordinance of said borough

by distress and sale of the goods and chattels of any person for disobeying or violating such ordinance."

The charter of the borough of Woodbury did not contain any provision expressly authorizing the common council to appoint a pound-keeper; but it was insisted, on the part of the defendant, that it was a power incident to the corporation, and that such officer, as well as the other provisions of the ordinance referred to, were necessary for the government and regulation of the borough.

The case was submitted on briefs to the CHIEF JUSTICE, and Justices OGDEN, HAINES, and RYERSON, by *J. B. Harrison,* for the demurrer, and *Armstrong, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The demurrer to the defendant's avowry draws in question the validity of the ordinance of the borough of Woodbury, under which he justifies the taking of the plaintiff's property.

It is insisted that the ordinance is illegal, because the council of the borough had no authority under their charter to appoint a pound-keeper. The office of pound-keeper in New Jersey is a public office recognized by statute. Public pounds were established by law at a very early period. In East Jersey, in 1668, before the surrender, every plantation within the province was required to make and maintain a good and sufficient pound for all sorts of cattle, and a penalty was inflicted for breaking up the pound. *Grants and Concess.* 82, 108. And in the same province, in 1682, it was enacted, that in every town, township, and hamlet, in and throughout every county, there shall be made and maintained a convenient pound for impounding of cattle that do trespass in the respective neighborhoods. In 1688 an act was passed to empower the inhabitants of New Barbadoes and Hackensack to build pounds. The preamble of the act recites that there is no provision made by act of assembly " to em-

power the inhabitants of the out plantations of New Barbadoes and Hackensack to erect and build a pound in their respective out plantations."

By an act passed in 1709, entitled "An act for the relief of the poor " (1 *Nevill* 9), every township and precinct was authorized to choose assessors and overseers of the poor. By the second section of the same act, the assessors of every township and precinct were empowered and required to assess their respective towns and precincts for such sums of money as will be necessary for supplying the charge of making and maintaining pounds for stray cattle and horses, and pounding such as are trespassers. And it is further enacted, that the said sums so assessed shall be collected and gathered by the overseers aforesaid in every town and precinct, *and be employed by such person as said towns, at their said meetings, shall elect and appoint by majority of votes.* This direction, that the money raised for making and maintaining pounds shall be *employed* by such person as the town meetings shall elect, is the first trace that I find of the mention of any distinct officer in connection with the public pound, and is probably the origin of the office of pound-keeper. It is worthy of notice that the authority for his election by the township is conferred by the same act which authorizes them to elect assessors and overseers of the poor. The second section of this act relating to the public pound continued in force till the revolution. *Allinson's Laws* 8. Nor does any change appear to have been made in its provisions until the act of 1798, entitled "An act incorporating the inhabitants of townships, designating their powers, and regulating their meetings." By the twelfth section of the act (*Paterson* 284), the provisions of which are still in force (*Nix. Dig.* 835), each township is authorized to elect, in connection with the other town officers, so many overseers of the highways and *pound-keepers* as they shall deem necessary or convenient; which said officers shall hold their respective offices for one year, and

White v. Tallman.

until others shall be chosen and legally qualified in their stead. The act to regulate fences (*Nixon's Dig.* 283, § 12,) prescribes that, in certain cases, beasts found trespassing shall be driven to the public pound of the township, and there be impounded. It further prescribes the duties to be performed by the pound-keeper, and the fees to be received by him. The public pound is, therefore, not only required by law to be maintained by the several townships, but the pound-keeper is a recognized public township officer, elected in the same way and holding his office for the same term as other township officers. Beasts taken trespassing are, in certain cases, to be driven to the public pound of the township, and the fees to be paid in such cases are specified. Can a borough or other municipal corporation, without express authority by law for that purpose, establish another public pound within the limits of any township, and prescribe regulations of fees to be paid variant from those prescribed by law?

From this brief history or legislation upon the subject, and from considerations which necessarily grow out of it, it would seem that the power to establish a public pound, or to appoint a pound-keeper, is not incident to every municipal corporation. Nor is it one of those subordinate officers which all corporations may as of course appoint, (*Wilcocks on Mun. Corp.* 17, *Nixon's Dig.* 138), and which, by the terms of their charter, the borough of Woodbury are expressly authorized to appoint. This view of the law derives confirmation from the fact that the charters of Newark, Jersey City, and probably most of our cities, in connection with the power to appoint other inferior officers, contain an express grant of power to elect pound-keepers with other municipal officers. The act of 1852 (*Nixon's Dig.* 19), confers upon the inhabitants of any town, village, or district in the state the power to erect pounds for certain purposes in the act specified. A pound-keeper is not required by the business of a municipal corporation, nor is the office necessary or essential to the

exercise of any of the powers enumerated in the charter. *Nixon's Dig.* 138, § 3.

But the real question in this cause is, whether the council of the borough have power, under the charter, to create a forfeiture of goods, or to enforce a penalty by sale of goods and chattels. If they have, they unquestionably have the power of appointing individuals to carry the ordinance into effect. Whether such individuals are lawful pound-keepers or not cannot be material, nor can it impair their powers that they are improperly denominated pound-keepers in the ordinance.

The by-law or ordinance of the corporation set out in the defendant's avowry is void; first, because it creates a forfeiture of chattels for the benefit of the borough, by reason of the non-claim of the owner within a specified time. Such power can only be exercised by express authority. *Grant on Corp.* 84; *Wilcocks on Mun. Corp.*, §§ 10, 12, 221, 222, 450.

The act is also void because it authorizes a sale of the defendant's goods and chattels in order to satisfy a penalty inflicted on a corporator. It is well settled that a by-law directing that a penalty be levied by distress and sale of the goods of the offender, or that the party, unless he pay, shall forfeit his goods, is void. *Clarke* v. *Tucket*, 2 *Ventris* 182; *Angell & Ames on Corp.* 393, § 363; 8 *Coke* 127, *b*; *Com. Dig.*, " *By-law*" *E*, 2.

The doctrine of these authorities was expressly sanctioned by this court in *Bergen* v. *Clarkson*, 1 *Halst.* 352, where it was held that a municipal corporation cannot enforce the payment of a tax legally assessed, by distress and sale of the party's goods; and that a by-law of the city of New Brunswick authorizing such levy and sale was illegal and void, and afforded no justification to the officer acting under it.

The demurrer is well taken, and judgment must be entered for the plaintiff accordingly.

CITED *in State* v. *Zeigler*, 3 *Vr.* 268; *State* v. *Troth*, 5 *Vr.* 387.